## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| KELLY PRICE BURNETT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 4:19-00969-DCN-TER |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ANDREW SAUL, Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Thomas E. Rogers, III's Report and Recommendation ("R&R"), ECF No. 25, that the court affirm Commissioner of Social Security Andrew Saul's (the "Commissioner") decision denying Kelly Price Burnett's ("Burnett") application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Burnett filed objections to the R&R, ECF No. 26. For the reasons discussed below, the court reviews the action de novo, reverses the decision of the Commissioner, and remands the matter for further consideration consistent with this order.

## I.  BACKGROUND

### A. Procedural History

Burnett filed an application for DIB on September 28, 2015 and an application for SSI on August 11, 2016 with an alleged disability onset date of August 7, 2015. Tr. 15.

---

[1] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically substituted for Nancy A. Berryhill, former Commissioner, as the defendant in this lawsuit.

Burnett's claims were denied initially and upon reconsideration. Thereafter, Burnett requested a hearing before an administrative law judge ("ALJ"), and ALJ Alice Jordan held a hearing on January 29, 2018, at which time Burnett and a vocational expert ("VE") testified. Id. The ALJ issued an unfavorable decision on May 30, 2018, finding that Burnett was not disabled within the meaning of the Act. Tr. 28. Burnett filed a request for review of the ALJ's decision, which the Appeals Council denied on March 12, 2019, making the ALJ's decision the Commissioner's final decision. Tr. 1-3.

On April 2, 2019, Burnett filed this action seeking review of the Commissioner's decision. Compl. The action was assigned to Magistrate Judge Rogers, who issued an R&R recommending that this court affirm the decision of the Commissioner (the "R&R"). ECF No. 25. Burnett filed objections to the R&R on May 22, 2020. ECF No. 26. The Commissioner did not file a response, and the time to do so has now expired. This matter is ripe for the court's review.

### B. Medical History

The parties are familiar with Burnett's medical history, the facts of which are ably recited by the R&R. Therefore, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of Burnett's objections to the R&R. Burnett alleges a disability onset date of August 7, 2015, at which time she was thirty-two years old. Burnett alleges disability due to cardiovascular disease, depression, anxiety, back pain, and fatigue. Tr. 15, 181-182. Burnett is a high school graduate and has a degree as a certified nurse's assistant. Tr. 58. Burnett has past work experience as a customer service representative, waitress, cook, cashier, and fast food worker. Tr. 79.

Burnett quit her last job in 2015 as a cashier at a fast food restaurant to visit her uncle who was dying.  Tr. 58-59.

### C. The ALJ Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505.  The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520, 416.920.  Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job.  See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981).  The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).  "If an applicant's claim fails

at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Burnett was disabled, the ALJ employed the statutorily required five-step evaluation process. At step one, the ALJ found that Burnett had not engaged in substantial gainful employment since her alleged onset date. Tr. 17. At step two, the ALJ determined that Burnett suffered from the following severe impairments: "ischemic heart disease; obesity; coronary artery disease; and fibromyalgia (20 CFR 404.1520(c) and 416.920(c))." Id. At step three, the ALJ found that Burnett's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments. Tr. 21. Before reaching the fourth step, the ALJ determined that Burnett retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR [§] 404.1567(b) . . . ." Tr. 21. In so finding, the ALJ accorded "some weight" to the opinion of Burnett's treating physician, Dr. Joshua Holmes of Montgomery Center for Family Medicine. Tr. 24-25. The ALJ found, at the fourth step, that Burnett was able to perform her past relevant work as a customer service representative. Tr. 26. In the alternative, at step five, the ALJ relied upon VE testimony to find Burnett capable of performing other work that exists in significant numbers in the national economy. Tr. 26-27. Specifically, the VE cited the jobs of ticket seller, office helper, and receiving weigher. Tr. 27. Therefore, the ALJ concluded that Burnett was not disabled under the meaning of the Act and denied Burnett's application. Tr. 27-28.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge.  See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).  The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"  Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence."  Id.  Where conflicting evidence "allows

5

reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). Although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987). While the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969).

### III.   DISCUSSION

Burnett lodges three objections to the R&R. First, Burnett argues that the "ALJ's rejection of the limitations [Dr. Holmes] found is not supported by substantial evidence." ECF No. 26 at 4. Second, Burnett argues that "the RFC is incomplete and not fully explained." Id. Third, Burnett argues that the "ALJ's finding that Burnett can return to past work as a customer service representative is not supported by substantial evidence." Id. at 7. The court addresses each in turn, finding reversal warranted on all three grounds.

### A.  The ALJ's Rejection of Dr. Holmes' Limitations

Burnett argues the ALJ did not properly evaluate Dr. Holmes' opinions of limitations. The court discusses the law that governs an ALJ's evaluation of medical opinion evidence and then discusses the opinion of Dr. Holmes, ultimately agreeing with Burnett.

### 1. Evaluation of Medical Opinion Evidence

Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [] impairment(s), including [] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Under the "treating physician rule," the opinion of a claimant's treating physician is generally entitled to significant weight in the determination of disability. See Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). In fact, the regulations demand that a medical opinion from a treating source be afforded "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The Fourth Circuit has noted the treating physician rule's good sense:

> [T]reating physicians are given more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[].

Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). Accordingly, an ALJ may afford a treating physician's medical opinion little weight "only if there is persuasive contradictory evidence." Mitchell, 699 F.2d at 187.

The ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

### 2. Dr. Holmes' Medical Opinion of Burnett's Limitations

On December 21, 2017, Dr. Holmes completed a questionnaire after treating Burnett every one to three months for about three years. Tr. 638. Dr. Holmes reported diagnoses of fibromyalgia, coronary artery disease, hypertension, hyperlipidemia, and depression. Id. As a prognosis, Dr. Holmes indicated that Burnett's chronic pain was likely to continue. Id. Symptoms included upper and lower body pain, morning stiffness, and chronic pain most concentrated in the upper extremities both at rest and while active with moderate severity. Id. Burnett had tender points in the upper body, hips, and knees with no major improvement in about two years. Id. Burnett had tried Lyrica and Amitriptyline without significant relief, and she was currently taking Gabapentin, which had potential to cause drowsiness. Id. Burnett's impairments had lasted at least twelve months, and emotional factors of depression and anxiety contributed to her pain. Id. Dr. Holmes found that Burnett's experience of pain or other symptoms was frequently severe enough to interfere with the attention and concentration needed to perform even simple work. Id. at 639. According to Dr. Holmes, she could tolerate low stress jobs, but higher stress levels could exacerbate her depression symptoms. Id. He indicated she could not walk any city blocks without rest or severe pain. Id. He further opined that Burnett: could sit 10 minutes and stand 10 minutes before needing to rest, could stand and walk

less than two hours total in an eight-hour workday, and could sit about two hours total. Id.  He found that she needs to change position from sit to stand at will, and will need unscheduled breaks several times a day.  Id. at 640.  He limited Burnett's lifting and carrying to less than 10 pounds frequently and 10 pounds occasionally, id., and opined that she was likely to miss more than four days a month of work, id. at 641.  Dr. Holmes indicated that Burnett has 16 out of 18 tender points located in both her upper and lower body, and on both sides of her body; that rheumatologic lab work was negative, supporting the diagnosis of fibromyalgia; and that her examinations and clinical history also suggested fibromyalgia.  Id. at 642.  Dr. Holmes reported symptoms of nonrestorative sleep, multiple tender points, chronic fatigue, morning stiffness, muscle weakness, numbness and tingling, anxiety, depression, and chronic fatigue syndrome.  Id. at 643.

The parties do not dispute that Dr. Holmes treated Burnett, such that his opinion triggers the treating physician rule's deferential evaluation standard.  Tr. 24; ECF No. 25 at 17.  However, in its decision, the ALJ accorded "only some weight" to Dr. Holmes' medical opinion.  Tr. 24-25.  The ALJ did so because, although Dr. Holmes treated Burnett, it found Dr. Holmes' limitations

> too restrictive when compared with the totality of the evidence of record, including mostly normal mental findings on examinations during the period relevant to this decision, lack of neurological abnormalities and strength deficits noted in his own examination findings, and his examinations consistently showing normal musculoskeletal range of motion.

Id.

Burnett objects to the R&R on this ground, arguing that "[b]ecause the ALJ's only reason for rejecting Dr. Holmes' opinions was a lack of objective findings—that are not

fully relevant to a fibromyalgia case—consistent with the limitations Dr. Holmes found,

the ALJ's rejection of the limitations he found is not supported by substantial evidence."

ECF No. 26 at 4.  The court agrees.

In this case, the ALJ found at step two that Burnett's fibromyalgia was a severe

impairment.  Despite this finding, the ALJ relied exclusively on objective medical

evidence to discount Dr. Holmes' medical opinion —namely, "mostly normal mental

findings on examination," "lack of neurological abnormalities and strength deficits noted

in his own examination findings," and "normal musculoskeletal range of motion."  Tr.

25.  The ALJ's erroneous reliance on a lack of objective medical evidence in discounting

Dr. Holmes medical opinion shows a misunderstanding of the nature of Burnett's

fibromyalgia diagnosis and the severity of her symptoms.

"[T]he absence of objective medical evidence to substantiate the diagnosis

of fibromyalgia or its severity is basically irrelevant."  Kalmbach v. Comm'r of Soc. Sec.,

409 F. App'x 852, 864 (6th Cir. 2011).  "Numerous courts have recognized

that fibromyalgia's symptoms are entirely subjective and [that] there are no laboratory

tests that can confirm the presence or severity of the syndrome."  Dowell v. Colvin, 2015

WL 1524767, at *3 (M.D.N.C. Apr. 2, 2015) (alteration in original) (internal quotation

marks omitted) (collecting cases).  "The primary symptom of fibromyalgia is chronic,

widespread pain.  Moreover, as the Second Circuit explained, 'physical examinations will

usually yield normal results—a full range of motion, no joint swelling, as well as normal

muscle strength and neurological reactions.'"  Id. (internal citation omitted)

(quoting Green-Younger v. Barnhart, 335 F.3d 99, 108-09 (2d Cir. 2003)). Significantly,

"the nature of fibromyalgia means that a patient's ability to perform certain tasks or

postural maneuvers on a given day does not necessarily reflect an ability to perform those tasks and maneuvers on a sustained basis." Winkler v. Comm'r, Soc. Sec. Admin., 2015 WL 4069334, at *4 (D. Md. July 2, 2015).

Courts in this circuit and others have "noted that fibromyalgia poses particular challenges to credibility analyses due to the limited available objective medical evidence." Elburn v. Comm'r, Soc. Sec., 2014 WL 7146972, at *3 (D. Md. Dec. 12, 2014) (quoting Gavigan v. Barnhart, 261 F. Supp. 2d 334, 340 (D. Md. 2003)); see, e.g., Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia."). And, "while the ALJ does not have to discuss every piece of evidence, the ALJ cannot cherry-pick the evidence that supports his decision to the exclusion of evidence favorable to the claimant. This is particularly troubling in cases of fibromyalgia where the symptoms are subjective in nature." Smith v. Colvin, 2016 WL 1089302, at *7–8 (D.S.C. Mar. 21, 2016).

The fact that Burnett had normal mental findings, normal range of motion, and no neurological abnormalities or strength deficits noted at various examinations is not good reason to discount Dr. Holmes' opinions. See, e.g., Green-Younger, 335 F.3d at 108-09 (noting that for fibromyalgia patients "physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions.") (citation omitted); Knight v. Comm'r, Soc. Sec. Admin., 2017 WL 3088365, at *2 (D. Md. July 20, 2017). Such evidence is not inconsistent with or contradictory to Dr. Holmes' opinions regarding Burnett's pain, numbness, muscle

weakness, and length of time she is able to sit and stand.  Aside from evidence showing

normal examination results, the ALJ relied on no other evidence for her decision to

accord "only some weight" to Dr. Holmes opinion.  As such, the court cannot find that

the weight the ALJ assigned to Dr. Holmes' medical opinion is supported by substantial

evidence.  The ALJ's improper evaluation of the medical opinion evidence constitutes

error and warrants remand.

## B.  The ALJ's RFC Determination

Second, Burnett argues that "the ALJ failed to account for all the limitations

caused by [Burnett's] severe fibromyalgia, so her RFC is incomplete and cannot form the

basis of a disability decision."  ECF No. 26 at 4.

### 1.  RFC Assessments Generally

RFC is a determination, based on all the relevant medical and non-medical

evidence, of what a claimant can still do despite her impairments; the assessment of a

claimant's RFC is the responsibility of the ALJ.  See 20 C.F.R. §§ 404.1520, 404.1545,

404.1546; SSR 96-8p, 1996 WL 374184, at *2.  If more than one impairment is present,

the ALJ must consider all medically determinable impairments, including medically

determinable impairments that are not "severe," when determining a plaintiff's RFC.  20

C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ must consider the combined effect of all

impairments without regard to whether any such impairment, if considered separately,

would be of sufficient severity.  20 C.F.R. § 404.1523; see Walker v. Bowen, 889 F.2d

47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[ ] of various impairments upon a

disability benefit claimant, the [Commissioner] must consider the combined effect of a

claimant's impairments and not fragmentize them.").

Social Security Ruling 96-8p explains how the Commissioner assesses RFC. See SSR 96-8p. "The Ruling instructs that the [RFC] assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 61 Fed. Reg. 34,474-5 (July 2, 1996), available at 1996 WL 362207). "Only after that may [RFC] be expressed in terms of the exertional levels of work [:] sedentary, light, medium, heavy, and very heavy." Id. (quoting SSR 96-8p). Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (quoting SSR 96-8p).

Social Security Ruling 12-2p explains how the Commissioner considers fibromyalgia (referred to in the regulations as "FM") in the RFC assessment: "We consider the effects of all of the person's medically determinable impairments, including impairments that are 'not severe.' For a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p. Moreover, under the "pain rule" applicable within the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." Coffman, 829 F.2d 514 at 518 (citing Hicks v. Heckler, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his or her symptoms, including fatigue and pain, and determine the extent to which the symptoms

can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R.

§§ 404.1529, 416.929. Indeed, the Fourth Circuit does not require the claimant to present

objective evidence of the pain itself. Jenkins v. Sullivan, 906 F.2d 107, 108 (4th

Cir.1990).

The ALJ's credibility determination for a claimant's symptoms "must contain

specific reasons for the weight given to the individual's symptoms, be consistent with and

supported by the evidence, and be clearly articulated so the individual and any

subsequent reviewer can assess how the adjudicator evaluated the individual's

symptoms." SSR 16-3p; see also Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.

1985) (stating that the ALJ's credibility determination "must refer specifically to the

evidence informing the ALJ's conclusions"). The following is a non-exhaustive list of

relevant factors the ALJ should consider in evaluating a claimant's symptoms, including

fatigue and pain: (1) the claimant's daily activities; (2) the location, duration, frequency,

and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4)

the type, dosage, effectiveness, and side effects of any medication taken to alleviate the

symptoms; (5) treatment, other than medication, received to relieve the symptoms; and

(6) any measures the claimant has used to relieve the symptoms. 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3). If the ALJ points to substantial evidence in support of

his decision and adequately explains the reasons for his finding on the claimant's

credibility, the court must uphold the ALJ's determination. Mastro v. Apfel, 270 F.3d

171, 176 (4th Cir. 2001). Credibility determinations are generally left to the ALJ's

discretion but should not be sustained if they are based on improper criteria. Breeden v.

Weinberger, 493 F.2d 1002, 1010 (4th Cir. 1974).

### 2. Burnett's RFC and Symptom Allegations

Burnett testified that she has intense pain in her neck, shoulders, arms, back, hips, knees, feet, and toes, and sometimes her earlobes, from fibromyalgia. Tr. 22. She was diagnosed in 2016, and her condition started with back pain. According to Burnett, stress causes her fibromyalgia to flare. Id. She gained 100 pounds since she became sick, weighing 330 pounds at the time of her hearing. Id. She estimated that she could sit for about an hour, stand for about five minutes before her legs start to cramp, and walk for 15 minutes. Id. Burnett testified that she lies down for fifty percent of the day on good days and the whole day on bad days. Id. On a good day, she gets her children up, puts their clothes out, takes them to school, returns home, cleans up, does dishes, washes clothes, and sweeps with breaks, among other things. Id. Burnett testified that she has three bad days per week when it is difficult for her to even go to the bathroom. Id.

First, the court notes that, because the weight assigned to Dr. Holmes' medical opinion was not supported by substantial evidence, the court cannot find the RFC is supported by substantial evidence. Ruling 12-2p indicates the treating physician's opinion is the best evidence for determining the extent of a claimant's fibromyalgia symptoms. Smith, 2016 WL 1089302, at *8; see SSR 12-2p, 77 Fed. Reg. at 43,642 ("When a person alleges FM, longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of the impairment." (emphasis added)). Dr. Holmes' treatment notes comprise a hefty longitudinal record—documenting Burnett's fibromyalgia, including pain and fatigue, for at least three years. Without assurance that the ALJ

applied the proper weight to this evidence, the court cannot find that the RFC determination is supported by substantial evidence.

Even if the ALJ had applied the proper weight to Dr. Holmes' medical opinion, the ALJ failed to adequately examine the severity of Burnett's fibromyalgia and allegations of pain and fatigue in determining Burnett's RFC as required by Social Security Ruling 12-2p. In her decision, the ALJ explained that "the claimant's allegations are only partially consistent with the evidence of record. The evidence of record does not show symptoms or limitations from the claimant's impairments at the severity alleged by the claimant." Tr. 22. In support of her conclusion, however, the ALJ fails to discuss any of the factors relevant to evaluating a claimant's symptoms, such as daily activities, medications, treatments, or aggravating factors, as the regulations required her to do. Rather, the decision points to a handful of medical records that supposedly contradict Burnett's statements about the persistence, intensity, and limiting effects of her fibromyalgia symptoms. Notably, these records do not undermine Burnett's statements about her symptoms; instead, they are plainly consistent with her allegations.

The medical records cited in the ALJ's decision show a lack of objective medical findings to support Burnett's statements about her fibromyalgia symptoms. The medical records cite normal examinations, such as "a regular exercise stress test," "normal cardiovascular examination," no "signs or respiratory distress," "normal gait and station," "normal musculoskeletal range of motion," "relatively normal laboratory results," and "alert and oriented mentation." Tr. 23-24. As the court already explained, however, "the nature of fibromyalgia itself renders . . . over-emphasis upon objective findings

16

inappropriate." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 248 (6th Cir. 2007); see also Green–Younger, 335 F.3d at 108–09 (finding that a lack of physical abnormalities did not undercut claimant's complaints of pain since physical examinations of fibromyalgia patients "will usually yield normal results"). The fact that the various doctors Burnett visited reported a lack of objective medical evidence of Burnett's fibromyalgia, fatigue, and pain cannot constitute substantial evidence to support the ALJ's decision. See Green–Younger, 335 F.3d at 107; Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 64–65 (11th Cir. 2010).

Other than a lack of objective medical findings, the ALJ does not cite anything in the record to suggest that Burnett did not suffer the degree of pain she reported or that her doctors should have disbelieved her complaints. See, e.g., Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) (ALJ's finding that claimant's fatigue did not significantly affect his RFC was not supported by substantial evidence where "examining physicians' reports, over a period of more than 18 months, consistently noted (and credited) claimant's complaints of persistent fatigue" and the record contained no "meaningful evidence to support a finding that claimant did not suffer from a significant level of fatigue on a regular basis"). The medical records cited in the ALJ's decision actually support, rather than undercut, Burnett's statements about her symptoms. For example, on February 18, 2016, Burnett reported "that she had not been doing well since her last visit" and had "increased fatigue" and "exercise intolerance." Tr. 23. On October 17, 2016, Burnett reported "multiple body aches in the shoulders and legs that lasted all day and were fairly constant" for which "Dr. Holmes gave an assessment of fibromyalgia and prescribed Elavil." Tr. 23. On November 21, 2016, "she was still having all over body pain and

muscle pain, as well as tingling in her fingers," and "Dr. Holmes noted that Amitriptyline made [Burnett]'s pain worse," thus prescribing Lyrica and Norco instead. Tr. 24. On February 1, 2017, Burnett "reported that Gabapentin had been helping her pain somewhat, but there were still some days she did not get relief from this medication." Tr. 24. In response, Dr. Holmes prescribed Burnett Tramadol. Id. On April 5, 2016, "[Burnett] reported that she felt Gabapentin was working very well, and she used Cyclobenzaprine occasionally." Tr. 24. However, on November 21, 2017, Burnett "reported that she was resting 'some better' at night since her medication, but, overall, she was still uncomfortable, she was under an immense amount of stress, and her whole body was cramped up." Tr. 24.

The credibility of Burnett's complaints of disabling pain are bolstered by evidence that she made numerous visits to her doctors over the course of several years, underwent numerous diagnostic tests, and was prescribed numerous medications. See Rogers, 486 F.3d at 248 (finding that the ALJ erred in discrediting claimant's complaints of pain where the ALJ "focus[ed] on purely objective evidence" and failed "to discuss or consider the lengthy and frequent course of medical treatment or the nature and extent of that treatment, the numerous medications Rogers has been prescribed, the reasons for which they were prescribed, or the side effects Rogers testified she experiences from those medications"); see also Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (finding that the ALJ erred in discrediting claimant's allegations of disabling pain where claimant made "numerous visits to doctors," was prescribed many different medications, "availed herself of many pain treatment modalities," and underwent "many diagnostic tests, including X-rays, CT scans, DNA tests, MRIs, and

18

blood work").  Additionally, the ALJ's reliance on normal examinations in assigning Burnett's RFC is inconsistent with her finding at step two that Burnett's fibromyalgia was a severe impairment.  Tr. at 25.  "To be a severe impairment at step two, the ALJ must have concluded that [Plaintiff]'s fibromyalgia significantly limited her ability to perform basic work activities."  Dowell, 2015 WL 1524767, at *3 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Although a finding at step two that a claimant has a severe impairment does not automatically require a corresponding restriction in the RFC determination, the court in the instant case cannot deduce whether the ALJ properly considered Burnett's subjective complaints of fibromyalgia pain and fatigue in determining her RFC.  See id.

In sum, the ALJ's reliance on evidence from isolated medical records to discredit Burnett's statements concerning the intensity, persistence, and limiting effects of her symptoms does not comport with the guidance of Social Security Ruling 12-2p.  This error warrants remand, at which time the ALJ should provide a more extensive explanation of her consideration of Burnett's physical impairments as a result of her fibromyalgia, including pain and fatigue, Burnett's credibility regarding her description of those impairments, and the effect, if any, of those conditions on her ability to sustain the demands of full time employment.  See Knight, 2017 WL 3088365, at *2.

### C.  The ALJ's Return to Past Relevant Work Determination

Third, Burnett argues that the "ALJ's finding that Burnett can return to past work as a customer service representative is not supported by substantial evidence."  ECF No. 26 at 7.  Specifically, Burnett (1) maintains that her work as customer service representative does not qualify as "past relevant work" under the Social Security

Administration's regulations and (2) challenges the ALJ's reliance on the VE's testimony to support its step four conclusion.  The Commissioner does not argue the merits of these points, but instead argues that Burnett's challenge is untimely and any error at step four is harmless.  ECF No. 17 at 12-13.

To begin, the Commissioner does not cite, and this court did not locate, any per se rule that a challenge to a VE's testimony is untimely if it was not raised at the ALJ hearing.  As such, the court will consider Burnett's challenge.  Upon careful consideration, the court agrees with Burnett.

### 1.  Past Relevant Work Definitional Threshold

The Social Security Administration's regulations define past relevant work as substantial gainful activity performed within the last fifteen years that lasted long enough for an individual to learn to do it.  20 C.F.R. § 404.1565 (2004); 20 C.F.R. § 404.1560.  Here, substantial evidence does not support the ALJ's finding that Burnett's past work as a customer service representative meets this definitional threshold.

Burnett does not dispute that she performed the job within the last 15 years.  ECF No. 15 at 24.  Instead, Burnett disputes that the work qualified as "substantial gainful activity."  Id.  Specifically, Burnett avers that, at most, her earnings as a customer service representative averaged $983.68 in 2015 and $937.17 in 2015.  ECF No. 15 at 25-26 (citing Tr. 185, 190-191).  Such earnings fall below the $1,070 SGA threshold for 2014 and $1,090 in 2015.  Substantial Gainful Activity, http://www.ssa.gov/oact/cola/sga.html.  The Commissioner does not address this point, and the record supports Burnett's calculation of her monthly earnings.  Tr. 185, 190-191.  Further, the ALJ's decision found that Burnett worked as a customer service representative from August 2014 to

February 2015. The VE classified this work as having a specific vocational preparation level of 5. Tr. 26. At this level, a typical worker requires over six months up to and including 1 year to learn the job. Dictionary of Occupational Titles, (DOT), Appendix C, Specific Vocational Preparation (SVP). Without the exact dates of Burnett's employment, it is unclear if Burnett was employed for over six months, as required. As such, there is a question whether Burnett was at this job long enough to learn it. However, the ALJ failed to develop the record in this regard.[2] Based on the record, substantial evidence does not support the ALJ's step four conclusion that Burnett's customer service work qualifies as past relevant work.

## 2. The VE's Past Relevant Work Testimony

Even if the definitional threshold were met, the ALJ did not adequately explain her finding that Burnett could return to work as a customer service representative. A determination of the claimant's ability to do past relevant work requires "a careful appraisal" of (1) the claimant's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) the medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the

---

[2] The court acknowledges that the ALJ asked Burnett how long she performed customer service work, to which Burnett replied, "I do believe it was almost a year." Tr. 60. However, because the ALJ's decision does not credit this timeframe, but instead specifically finds that Burnett was employed from August 2014 to February 2015, this evidence does not rise to "more than a mere scintilla." Laws, 368 F.2d 640, 642 (4th Cir.1966).

requirements of the work as generally performed in the economy." SSR 82–62, 1982 WL 31386, at *4.

Under Social Security Ruling 82-62, when deciding whether an individual has the capacity to perform a past relevant job, the ALJ's decision must contain the following specific findings of fact:

> 1. A finding of fact as to the individual's RFC.
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82–62, 1982 WL 31386, at *4; Osgood v. Astrue, 2010 WL 737839, at *6 (D.S.C. Mar. 2, 2010). The same ruling explains that, "reliance solely on testimony from a VE is an insufficient basis for a [past relevant work] decision." Parker v. Astrue, 664 F. Supp. 2d 544, 557 (D.S.C. 2009) (citing Prim v. Astrue, 2008 WL 444537 (W.D. Va. 2008) (slip opinion) (When "the ALJ makes findings about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.").

In the instant case, the ALJ made the first SSR 82–62 required finding of Burnett's RFC, albeit with the errors discussed above. Tr. 21. However, the second required finding—the physical and mental demands of Burnett's past customer service work—is absent entirely. See Tr. 15-15. And the third finding—whether Burnett's RFC's permits a return to that past work—was conclusory, citing only the VE's testimony as evidentiary support. Tr. 26. Thus, there is not enough evidence in the record either to support or to refute the ALJ's determination that Burnett could return to

work as a customer service representative.  See Woody v. Barnhart, 326 F. Supp. 2d 744, 751 (W.D. Va. 2004).

The VE's testimony as to Burnett's past relevant work as a customer service representative similarly lacked substance.  While the VE testified that this job generally had a sedentary work level, neither Burnett nor the VE testified about how Burnett *actually performed* her customer service work.  Tr. 26-27.  As such, the ALJ conclusion that Burnett can return to her customer service work as "actually" performed is not supported by substantial evidence.  Tr. 26.  The VE only testified that, in his opinion, a hypothetical person of Burnett's age, education, work history, and RFC could return to work as a customer service representative.  Tr. 80-81.  The ALJ had ample opportunity at the hearing to question Burnett about her work as a customer service representative or to request further evidence about the specific nature of the job—for instance, how long Burnett was required to sit/stand, how many breaks she had, whether she had to lift any amount of weight, etc.  However, the ALJ did not ask one question about the requirements of the past relevant customer service work that ultimately proved dispositive in the step four inquiry.  See Tr. 53-85.  Such factual findings are particularly important given the VE's testimony that, if the hypothetical person was off task 15% or more during an eight-hour day or absent two or more days per month, no jobs would be available.  Tr. 82.  This court holds that such minimal documentation and exploration of the pivotal factor in the ALJ's decision fails to meet the "substantial evidence" standard.  Laws, 368 F.2d at 642.  The ALJ erred in relying solely on the VE for the past relevant work assessment and failed to develop a factual basis for determining that Burnett could return to her previous work as a customer service representative.

23

The Commissioner lastly argues that any error as to Burnett's ability to return to work as a customer service representative was harmless, given that it made an alternative finding at step five. The Commissioner is incorrect. See Parker, 664 F. Supp. 2d at 556 ("Because the ALJ must reconsider his RFC findings on remand, an error in the past relevant analysis is harmful to Plaintiff."). Because the ALJ's step five findings were based on an RFC that, as explained herein, is unsupported by substantial evidence, the ALJ's conclusion as to step five is also suspect, and the ALJ's error is not harmless. Because the ALJ's past relevant work findings are not supported by substantial evidence, as required by Walls, 296 F.3d at 290, this case must be reversed and remanded for further development of the particular job duties of a customer service representative, as required by SSR 82–62.

## IV.   CONCLUSION

For the foregoing reasons the court declines to adopt the R&R, **REVERSES** the decision of the Commissioner, and **REMANDS** the matter to the Commissioner for further administrative action consistent with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 29, 2020**
**Charleston, South Carolina**

24